UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:16-CV-00749

| | |
|---|---|
| MARIELA HERNANDEZ REYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| JAMES McCAMENT, Acting Director, ) | |
| United States Citizenship and Immigration ) | |
| Services, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

THIS MATTER is before the Court on the parties' dispositive motions, including Plaintiff's Motion to Set Aside Final Agency Action (Doc. No. 14) and Defendant's Motion for Judgment on the Record (Doc. No. 17). Both motions have been fully briefed. Although the Court initially scheduled a hearing (Doc. No. 20), the Court cancelled that hearing after review of the pleadings, record, and applicable law, because it determined that a hearing would not aid the Court in resolving this matter. Accordingly, this Order issues on the pleadings. For the reasons that follow, Plaintiff's Motion to Set Aside Final Agency Action is DENIED, and Defendant's Motion for Judgment on the Record is GRANTED.

## I. BACKGROUND

The facts from the record come largely undisputed by the parties. Plaintiff was born in El Salvador on October 7, 1996, to Maria Isabel Reyes Reyes and Maximiliano Hernandez Ponce. Around sixteen years of age, she entered the United States, where she was apprehended on or about May 29, 2013, by the United States Customs and Border Protection near Hidalgo, Texas. Removal proceedings commenced, and the United States Department of Health and Human Services Office of Refugee Resettlement ("ORR") took Plaintiff into custody because she was an unaccompanied

1

minor. ORR subsequently released Plaintiff into the custody of her father, Ponce, who lived in North Carolina at the time and continues to reside in the state.

Approximately a year-and-a-half later, Plaintiff's father sought an order from the juvenile court in North Carolina by filing an ex parte motion seeking temporary emergency custody of Plaintiff. On October 3, 2014, the General Court of Justice for Mecklenburg County, North Carolina, granted Ponce's motion and issued an "Order Granting Ex Parte Temporary Custody." (Doc. No. 13, p. 117) (hereinafter, "Order Granting Ex Parte Temporary Custody"). As part of the Order Granting Ex Parte Temporary Custody, the court found as fact that:

> Defendant [Maria Isabel Reyes Reyes] abandoned and neglected Mariela Hernandez Reyes in 2008 by stopping to provide safety, shelter, and food for her. Mariela Hernandez Reyes was forced to migrate to the United States to seek refuge with the Plaintiff, who is the biological father. Since that date, the minor child has been in the care of her biological father. If forced to return to El Salvador, the minor child would be completely on her own and without the proper family support system."

(Doc. No. 13, p. 117). The conclusions of law specifically indicate the court relied on N.C. Gen. Stat. § 50A-204(a) and § 50A-311. (Doc. No. 13, p. 117). In addition to making other findings of fact and conclusions of law, the court ordered that Ponce be "granted *emergency temporary custody* and control of the minor child, Mariela Hernadez Reyes." (Doc. No. 13, p. 117) (emphasis added). The court also ordered "notice of the hearing be given to the Defendant, Maria Isabel Reyes Reyes. The hearing to determine custody of the minor children will be held on October 8, 2014, at the Mecklenburg County District Courthouse . . . ." (Doc. No. 13, p. 118).

On October 3, 2014, the same day the juvenile court issued the Order Granting Ex Parte Temporary Custody, Plaintiff filed an I-360, Petition for Special Immigrant, with United States Citizenship and Immigration Services ("USCIS") requesting special immigrant juvenile immigration status ("SIJ"). Four days later, on October 7, 2014, Plaintiff turned eighteen years old

2

and was no longer a minor under North Carolina law. The hearing originally scheduled for October 8, 2014, with the North Carolina juvenile court never took place.

In November 2014, USCIS issued Plaintiff a Notice of Intent to Deny her petition. The Notice indicated Plaintiff had failed to submit sufficient evidence to meet her burden to establish SIJ eligibility, noting "[t]he emergency custody order is expressly temporary . . . [and] did not contain requisite language regarding reunification." (Doc. No. 13, p. 98). The Notice provided Plaintiff an opportunity to respond prior to a final decision being issued. Plaintiff responded, submitting two affidavits – one from Plaintiff and one from her father, Ponce – explaining Plaintiff's relationship with her mother and father. Both affidavits were dated December 12, 2014. (Doc. No. 13, pp. 83, 86). Following receipt of this evidence and other materials from Plaintiff's counsel, USCIS denied Plaintiff's petition.

The USCIS decision stated several reasons for denying Plaintiff's petition, including the fact the juvenile court order "does not make specific findings and one cannot reasonably infer that reunification is not viable based on the court order and on the documents submitted." (Doc. No. 13, p. 65). The USCIS also explained:

> While a permanent custody order is not technically required for SIJ classification, the order itself should be of a permanent nature. The ex-parte order submitted clearly shows that custody is temporary and shows that a future court date was scheduled to determine custody of the petitioner. . . . Additionally, while the sworn statement submitted from the petitioner and her father outline the petitioner's circumstances, the sworn statements are dated after the court date on October 3, 2014, and therefore were not given as evidence during the court proceeding. . . .

(Doc. No. 13, p. 65).

Plaintiff then appealed to the Administrative Appeals Office ("AAO") for USCIS, which conducted a de novo review, affirmed the decision to deny Plaintiff's petition, and dismissed the appeal. The AAO decision, dated July 9, 2015, concluded Plaintiff failed to show she was the subject of a qualifying juvenile custody order. (Doc. No. 13, p. 13). In so ruling, the AAO

3

concluded that it could not "treat the temporary custody order as permanent" because doing so "would require us to make a state court determination, which[,] as acknowledged by the petitioner, is outside our authority in these immigration proceedings." (Doc. No. 13, p. 12).

Next, Plaintiff returned to juvenile court in North Carolina and filed a Motion for Judgment Nunc Pro Tunc. On July 22, 2015, the Mecklenburg County District Court issued an "Order for Judgment Nunc Pro Tunc *(ex parte)*," which made findings of fact and conclusions of law including, among other things:

> 3. Due to an unintentional omission, the [October 3, 2014] order did not include the following paragraph:
> > This Court determines that: (1) it has jurisdiction over Mariela Hernandez Reyes and that she is dependent upon this Court; (2) Reunification with the biological mother is not viable due to neglect and abandonment under state law; (3) it is not in Mariela Hernandez Reyes' best interest to return to El Salvador; and (4) it is [in] Mariela Hernandez Reyes' best interest for temporary and permanent custody to be awarded to [her father, Ponce].
> 4. Because the child turned 18 years old four days after the signing of the Order, the Order granting temporary custody to Plaintiff was as permanent as possible under North Carolina Law.

(Doc. No. 13, p. 14) (hereinafter, "Ex Parte Order for Judgment[1] Nunc Pro Tunc"). Based on those findings of facts and conclusions of law, the district court then ordered:

> 1. The order dated October 3, 2014[,] be corrected to include the following findings of fact:
> This Court determines that: (1) it has jurisdiction over Mariela Hernandez Reyes and that she is dependent upon this Court; (2) Reunification with the biological mother is not viable due to neglect and abandonment under state law; (3) it is not in Mariela Hernandez Reyes' best interest to return to El Salvador; and (4) it is [in] Mariela Hernandez Reyes' best interest for temporary and permanent custody to be awarded to [her father, Ponce].
>
> 2. That due to the [sic] Mariela Hernandez Reyes' age at the time the order was entered, the order was as permanent as possible under North Carolina law.

---

[1] The Court notes the document's use of the word "Judgment" by the juvenile court in the caption. This Court's reference as such in short form throughout this Order is not meant to indicate the Court's consideration of the document as an actual judgment. Indeed, as explained throughout, this second order issued by the juvenile court sought to "modify" its previous ex parte temporary "order." Nothing in this subsequent "nunc pro tunc" document contains citation to authority to support the conversion of the previous "order" to a "judgment." Nevertheless, this Court retains the language used by the juvenile court.

4

(Doc. No. 13, p. 15). Based upon this new order, Plaintiff moved for the AAO to reopen her matter and reconsider its decision. On May 3, 2016, the AAO denied Plaintiff's motion, finding that the Ex Parte Order for Judgment Nunc Pro Tunc did not make the earlier Order Granting Ex Parte Temporary Custody a qualifying order for SIJ status. The AAO explained:

> [T]he juvenile court invoked its emergency jurisdiction under NCGS section 50A-204(a), and nothing about the nunc pro tunc order cures the underlying deficiency of the ex parte emergency order, which is that the ex parte emergency order was obtained through a proceeding that allows a juvenile court to take temporary jurisdiction over a child when necessary in an emergency to protect the child, and which defers custody determinations to a subsequent hearing.

(Doc. No. 13, p. 6). The AAO concluded, "when viewed together the ex parte emergency order and the nunc pro tunc order are not sufficient to satisfy section 101(a)(27)(J)(i) of the [Immigration and Nationality] Act." (Doc. No. 13, p. 6). The AAO continued, "[W]e also determine that USCIS' consent to the grant of the SIJ classification would not be warranted even if the Petitioner had a qualifying juvenile court order." Id. In so concluding, the AAO noted that the juvenile court's conclusions lacked a sufficient factual basis, particularly as to the non-viability of Plaintiff's reunification with her mother. Following this decision by the AAO, Plaintiff filed the instant action. The pending dispositive motions and briefing followed.

## II. STANDARD OF REVIEW

The instant action presents the issue of whether the Court should overturn a decision by USCIS denying Plaintiff's petition for SIJ status. This Court's judicial review of the agency's decision is available under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, and governed by statutory and regulatory standards. See 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11; see also M.B. v. Quarantillo, 301 F.3d 109 (3d Cir. 2002). Congress created SIJ status as a form of immigration relief permitting non-citizen children to obtain lawful, permanent residency in the United States. See 8 U.S.C. § 1101(a)(27)(J). Plaintiff submitted a Form I-360 to apply for SIJ

5

status pursuant to 8 U.S.C. § 1101(a)(27)(J), which provides, in relevant part, that a "special immigrant" means:

> (J) an immigrant who is present in the United States—
> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—
> > (I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
> > (II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter . . . .

With respect to § 1101(a)(27)(J)(i-ii), the requirements to obtain special immigrant status are straightforward. Recently, in <u>Budhathoki v. Dep't of Homeland Sec.</u>, the Western District of Texas explained the statutory "two-step process" to apply for SIJ status:

> First, the juvenile must apply to a state "juvenile court" for a predicate order finding that:
> (1) The juvenile is under the age of 21 and is unmarried;
> (2) Reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under state law;
> (3) It is not in the best interest of the juvenile to be returned to his parents' previous country of nationality or last habitual residence;
> (4) The juvenile is dependent on the state court or has been placed under the custody of an agency or an individual appointed by the court; and
> (5) The state court has jurisdiction under state law to make judicial determinations about the custody and care of juveniles. <u>See</u> 8 U.S.C. § 1101(a)(27)(J)(i), (ii); 8 C.F.R. § 204.11(a), (c), (d).
> Second, the juvenile must submit an application, which includes the state juvenile court order, to USCIS, demonstrating his statutory eligibility.

6

220 F. Supp. 3d 778, 782 (W.D. Tex. 2016).

The final step in § 1101(a)(27)(J)(iii) requires consent to SIJ status by the Department of Homeland Security. USCIS has issued guidance concerning this consent. See Memo. from Donald Neufeld, Acting Assoc. Dir., U.S. Citizenship and Immig. Servs., et al., to Field Leadership, Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions (Mar. 24, 2009) (hereinafter "USCIS 2009 Memo") (see Doc. No. 17-2, p. 9). The USCIS 2009 Memo provided guidance for USCIS personnel in performing their duties relative to adjudication of SIJ applications and the consent issue:

> The consent determination by the Secretary, through the USCIS District Director, is an acknowledgement that the request for SIJ classification is bona fide. This means that the SIJ benefit was not "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment."

(Doc. No. 17-2, p. 11) (quoting H.R. Rep. No. 105-405, at 130 (1997)). The burden of proof is on a petitioner to demonstrate eligibility for SIJ classification by a preponderance of the evidence.

In moving to set aside the USCIS decision, Plaintiff argues USCIS failed to abide by these statutory and other regulations when it denied Plaintiff's SIJ petition. In considering whether to grant Plaintiff the relief she seeks, this Court must analyze the agency's decision employing the limited scope of review permitted under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Under the APA, a court is bound to consideration of the administrative record on which the agency based its decision, as well as applicable law, when determining whether to hold unlawful or set aside an agency's actions, findings or conclusions. 5 U.S.C. § 706; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743–44 (1985); Dow AgroSciences LLC v. Nat. Marine Fisheries Serv., 821 F.Supp.2d 792, 798 (D.Md. 2011). While Plaintiff requests this Court set aside USCIS's decision, USCIS, in turn, has moved the Court for judgment on the record in its favor. "[I]n an APA agency review case, summary

judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA.'" Hyatt v. U.S. Patent & Trademark Office, 146 F. Supp. 3d 771, 780 (E.D. Va. 2015) (quoting Sierra Club v. Mainella, 459 F.Supp.2d 76, 90 (D.D.C. 2006)). In short, to decide the parties' respective motions, the Court must determine whether USCIS's decision is supported by the record and applicable law.

### III. ANALYSIS

Plaintiff argues this Court should set aside the USCIS decision because it was: (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," (2) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (3) the agency undertook action "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D). In response, USCIS argues it is entitled to judgment on the record affirming its denial of Plaintiff's SIJ petition since Plaintiff neither met the eligibility requirements of 8 U.S.C. § 1101(a)(27)(J) nor did she provide a sufficient basis for the agency to consent to her classification as a SIJ. The Court will address these arguments in turn.

**A. Arbitrary and Capricious Under 5 U.S.C. § 706(2)(A)**

Arbitrary and capricious agency action can occur where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "[S]o long as a reasonable mind could find adequate support for the decision, it must stand." Ogbolumani v. Napolitano, 557 F.3d 729, 733 (7th Cir. 2009). The Fourth Circuit has explained, "This involves a searching and careful, but ultimately narrow and highly deferential, inquiry. In the end, if the agency has followed the proper procedures, and if there is a rational basis for its decision, we will not disturb its judgment." Webster v. U.S.

Dep't of Agric., 685 F.3d 411, 422 (4th Cir. 2012) (internal citations omitted). "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009) (citing Natural Res. Def. Council, Inc. v. EPA, 16 F.3d 1395, 1400 (4th Cir.1993)). "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." Ohio Valley Envtl. Coal., 556 F.3d at 192 (quotations and citations omitted).

The Fourth Circuit has explained, however, such deference does not reduce this Court's review to a "rubber stamp" of agency action. Id.

> While the standard of review is narrow, the court must nonetheless engage in a searching and careful inquiry of the record . . . to educate the court so that it can understand enough about the problem confronting the agency to comprehend the meaning of the evidence relied upon and the evidence discarded; the questions addressed by the agency and those bypassed; the choices open to the agency and those made.

Id. at 192-93 (quotation and citations omitted).

Here, Plaintiff argues the USCIS decision is arbitrary and capricious because it lacks reasoned decision-making in concluding the orders issued by the juvenile court did not constitute a bona fide order. In support of this argument, Plaintiff specifically asserts the USCIS AAO decision erred in concluding: (1) "the ex parte emergency order was not a qualifying juvenile court order when it was issued and the *nunc pro tunc* order does not cure that deficiency;" and (2) "the record does not contain evidence of the factual basis for the juvenile court's SIJ findings." (Doc. No. 13, pp. 7-8). The Court disagrees with Plaintiff that either of these two conclusions are arbitrary or capricious, instead finding the USCIS AAO decision issupported by applicable law and the record here.

9

1. **Qualifying Juvenile Court Orders**

The Court turns first to the issue of whether the USCIS properly concluded Plaintiff failed to present a qualifying juvenile court order – either as an initial matter with the Order Granting Ex Parte Temporary Custody or when supplemented by the Ex Parte Order for Judgment Nunc Pro Tunc. As explained above, in order to be eligible for SIJ status, an applicant must first obtain a juvenile court order with specific findings as to: (1) dependency or custody, (2) non-viability of reunification with "1 or both of the immigrant's parents . . . due to abuse, neglect, abandonment . . . ," and (3) a determination that it is not in the applicant's best interest to be returned to the previous country of nationality or last habitual residence. See 8 U.S.C. § 1101(a)(27)(J)(i-ii). Here, the two juvenile court orders, when read together, generally reference each of these three statutory requirements. USCIS's final decision, however, determined the orders failed to qualify under the statute because there was no finality to the proceedings and thus, no final decision made as to the three statutory requirements. Plaintiff contends such a conclusion is arbitrary and capricious. To the contrary, in light of the limited jurisdiction and failure to afford due process rights to Plaintiff's mother, the Court agrees that Defendant "provided an explanation of its decision that includes a rational connection between the facts found and the choice made." Ohio Valley Envtl. Coal., 556 F.3d at 192 (quotations and citations omitted).

Here, the juvenile court issued orders pursuant to N.C. Gen. Stat. § 50A-204(a), which is entitled "Temporary emergency jurisdiction," and N.C. Gen. Stat. § 50A-311, which is entitled "Warrant to take physical custody of child." (See Doc. No. 13, p. 117; Order Granting Ex Parte Temporary Custody) (noting the ruling was issued pursuant to "N.C. General Statutes § 50A-204(a) and 50A-311")). N.C. Gen. Stat. § 50A-204 provides for *temporary* and *emergency* jurisdiction in

limited instances of abandonment or if the child or family member is threatened with mistreatment or abuse.[2]

Under North Carolina state law, "[w]hen a court invokes emergency jurisdiction, any orders entered shall be temporary *protective* orders only." In re Brode, 66 S.E.2d 858, 860 (N.C. Ct. App. 2002) (citations omitted) (emphasis added). While actual termination of parental rights is not required, temporary custodial placements generally do not qualify to establish eligibility for SIJ classification because there must be evidence that the juvenile court made a full determination under state child welfare law. 6 USCIS Policy Manual J.2(D)(2), 2017 WL 443003 ("The temporary unavailability of a child's parent does not meet the eligibility requirement that family reunification is not viable."). The record here indicates the juvenile court considered custody in the vacuum of a temporary, protective determination. The juvenile court issued both orders *ex parte* – relying solely on evidence presented without notice to Plaintiff's mother or an opportunity for Plaintiff's mother to respond or be heard. Without affording Plaintiff's mother her due process rights, the juvenile court orders could not be construed as a final custody determination nor could the court make a final decision as to viability of reunification with Plaintiff's mother.

North Carolina law supports this conclusion, particularly as to viability of reunification with Plaintiff's mother, which is likened to termination of parental rights. N.C. Gen. Stat. § 7B-1101 provides, in relevant part:

> The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the state of residence of the parent. Provided, that before exercising jurisdiction under this Article regarding the parental rights of a nonresident parent, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201 or G.S. 50A-203, *without regard to G.S. 50A-204 and that process was served on the nonresident parent pursuant to G.S. 7B-1106.*

---

[2] In contrast to the temporary emergency jurisdiction asserted by the juvenile court here, N.C. Gen. Stat. 50A-201 governs initial child-custody jurisdiction, which exists when North Carolina is the juvenile child's home state; substantial evidence is available in the state concerning the child's care, protection, and personal relationships; and no other state has or asserts jurisdiction to make a custody determination.

(Emphasis added). As noted above, the juvenile court here made no finding of jurisdiction beyond the temporary jurisdiction permitted under N.C. Gen. Stat § 50A-204, and without an assertion of jurisdiction under N.C. Gen. Stat. § 50A-201 or § 50A-203 and without providing Plaintiff's mother an opportunity to be heard, the juvenile court could not resolve with finality the issue of reunification.

The orders here indicate the juvenile court recognized the significance in affording due process protections to Plaintiff's mother. The juvenile court's recognition of the impermanent nature of the juvenile court proceedings is evidenced by the use of the phrase "temporary custody" throughout the original Order Granting Ex Parte Temporary Custody, as well as that order's setting of a hearing. The Order Granting Ex Parte Temporary Custody specifically provided, "It is so ordered that notice of the hearing be given to the [Plaintiff's biological mother] Maria Isabel Reyes Reyes. *The hearing to determine custody* of the minor children will be held on October 8, 2014, at the Mecklenburg County District Courthouse at 832 E. 4th St., Charlotte, NC 2820." (Doc. No. 13, p. 118) (emphasis added). Beside this typewritten setting of a hearing, someone printed in handwriting "Courtroom 5150 at 9 am." Id. Nothing in the record before this Court indicates Plaintiff objected to the setting of the hearing or otherwise sought relief based on the fact she would have turned eighteen years old by that date.

Despite the clarity provided in the original order, the Ex Parte Order for Judgment Nunc Pro Tunc "ORDERED" the previous order to "be corrected to include the following *findings of fact*: . . . it is [in Plaintiff's] best interest for temporary and *permanent* custody to be awarded to [her father]." (Doc. No. 13, p. 15) (emphasis added). The Ex Parte Order for Judgment Nunc Pro Tunc also included a separate statement in its "ORDERED" section concluding "that due to the [sic] Mariela Hernandez Reyes' age at the time the order was entered, the order was as permanent as possible under North Carolina Law [sic]." Id. The Ex Parte Order for Judgment Nunc Pro Tunc

12

provides no explanation for its previous setting of a hearing, nor does it note the setting of the hearing was made in error. Despite these statements attempting to address the permanency of the juvenile court's previous order, the Ex Parte Order for Judgment Nunc Pro Tunc did not cite to *any* additional statutory authority for which jurisdiction existed, and therefore did not change the nature of the juvenile court's jurisdiction: that is, to award *temporary, emergency, protective* custody. In fact, by the time this second order issued, Plaintiff was 18 years old, and the juvenile court lacked jurisdiction to receive additional evidence, make new findings, or expand beyond the N.C. Gen. Stat. § 50A-204 temporary emergency jurisdiction in the original Order Granting Ex Parte Temporary Custody. Since jurisdiction was limited to an "ex parte" and "temporary" determination, no finality to the proceedings existed.

For these reasons, USCIS made a reasoned decision in considering the ex parte and temporary nature of the juvenile court orders in its consideration of whether Plaintiff had obtained a bona fide order sufficient to warrant USCIS consent under 8 U.S.C. § 1101(a)(27)(J). Indeed, had the temporary *ex parte* orders been considered anything but a precursor to a final ruling, Plaintiff's mother could raise substantial due process concerns since she neither had notice nor an opportunity to be heard, either in person or via other communication to the juvenile court, as to her position on custody. The Court recognizes the difficulty posed by last minute, ex parte custody motions; however, neither this Court nor Defendant can overlook the limited jurisdiction or statutory notice requirements under North Carolina law, which were applicable to the juvenile court here. Consequently, the orders lack a qualifying final determination that parental reunification is not viable, as § 1101(a)(27)(J)(i) requires. The AAO decision issued by USCIS concluded as much, and Plaintiff has not shown how that conclusion was arbitrary and capricious.

13

## 2. Factual Basis for Juvenile Court Orders

Plaintiff also argues USCIS arbitrarily decided that even had Plaintiff presented a qualifying juvenile court order, USCIS's consent would not be warranted because the record does not contain evidence of the factual basis for the juvenile court's findings. (Doc. No. 13, p. 8). Plaintiff argues, instead, the following findings of fact, when compiled from both juvenile orders, provide a sufficient factual basis for the juvenile court's custody determination:

- Plaintiff "has resided primarily with [her father] since May 2013." (Doc. No. 13, p. 117);
- Plaintiff's mother "abandoned and neglected [Plaintiff] in 2008 by stopping to provide safety, shelter, and food for her." (Id.);
- Plaintiff "was forced to migrate to the United States to seek refuge with . . . [her] biological father." (Id.);
- "If forced to return to El Salvador, [Plaintiff] would be completely on her own and without the proper family support system." (Id.);
- "Reunification with the biological mother is not viable due to neglect and abandonment under state law." (Doc. No. 13, p. 14).

While the orders collectively appear to contain some of the requisite findings on their face, Plaintiff has failed to demonstrate the orders – both of which were entered *ex parte* – contain a reasonable factual basis on which the juvenile court relied in making its conclusions, which was the problem identified in USCIS's final decision. Aside from pointing to these general findings listed above, Plaintiff has not identified any *specific factual findings regarding* the basis for finding abuse, neglect, or abandonment.

> Dependency orders that include or are supplemented by specific findings of fact regarding the basis for a finding of abuse, neglect, abandonment, or some similar basis under State law are usually sufficient to provide a basis for the Secretary's consent. Orders lacking specific factual findings generally are not sufficient to provide a basis for consent, and must be supplemented by separate findings or any other relevant evidence establishing the factual basis for the order.

Special Immigrant Juvenile Petitions, 76 Fed. Reg. 54978-01. Plaintiff attempted to remedy the apparent problem with the juvenile court orders by submitting two affidavits to USCIS. The affidavits, however, were problematic in that nothing tied the affidavits to the juvenile court

14

proceedings. These affidavits, one from Plaintiff and one from her father, provide some explanation of Plaintiff's situation while living in El Salvador. (Doc. No. 13, pp. 81-86). Both affidavits were dated December 10, 2014, two months after issuance of the Order Granting Ex Parte Temporary Custody, and after the juvenile court no longer had jurisdiction over Plaintiff. Id. Plaintiff has never contended she presented either these affidavits or the information contained therein to the juvenile court.[3] USCIS noted:

> [S]tatements regarding the Petitioner's circumstances while living in El Salvador submitted by the Petitioner and her father in response to a notice of intent to deny (NOID) issued by the Director are dated after the date of the *ex parte* emergency order and the Petitioner does not assert that they were considered by the junveile court prior to issuance of either the *ex parte* emergency order, or at the time of the *nunc pro tunc* order.

(Doc. No. 13, p. 7).

Indeed, the record is devoid of *any* evidence presented to and relied upon by the juvenile court in support of the *ex parte* motion for temporary emergency custody, other than a passing reference to the hearing held in juvenile court found in one of Plaintiff's briefs submitted to USCIS during the appellate process before the agency. (See Doc. No. 13, p. 32). Even considering the affidavits, none of the findings of fact or reference to submission of such facts appears in the juvenile court orders. See Budhathoki, 220 F. Supp. 3d at 787 ("While Plaintiffs provide a plausible construction of Texas law supporting the Texas court's jurisdiction and Plaintiffs' dependency, none of their arguments are found within the Texas courts' SAPCR orders, which is what USCIS reviewed in making its decisions.").

Without specific findings of fact from the juvenile court or the inclusion of evidence on which the juvenile court relied, this Court – similar to USCIS – is left with an inadequate record to

---

[3] It bears noting that the juvenile court was without jurisdiction to reopen evidence at the time of issuance of the Ex Parte Order for Judgment Nunc Pro Tunc.

support the findings appearing on the face of the two juvenile court orders. Plaintiff has failed to show the arbitrary or capricious nature of USCIS's decision concluding the juvenile court orders failed to provide a reasonable factual basis upon which the juvenile court determined the non-viability of Plaintiff's reunification with her mother.

**B. Exceeding Authority Under 5 U.S.C. § 706(2)(C)**

Having decided the decision was not arbitrary or capricious, the Court turns to Plaintiff's arguments that USCIS exceeded its statutory authority in requiring a "permanent" order from the juvenile court. In considering whether the agency exceeded its statutory jurisdiction, authority, or limitations, courts consider "whether the agency has gone beyond what Congress has permitted it to do . . . ." City of Arlington, Tex. v. F.C.C., 569 U.S. 290, 133 S. Ct. 1863, 1969 (2013). An agency's "power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." Id. Agency rules that are inconsistent with or in violation of an agency's own regulations are unlawful. 5 U.S.C. § 706(2)(C); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994).

Here, Plaintiff contends the permanency requirement is an *ultra vires* eligibility requirement in contravention of the text and structure of the statue or regulations. In support of this argument, Plaintiff contends that by requiring a "permanent" order, USCIS denies Plaintiff SIJ status on account of her age since she aged out of the juvenile court prior to the custody hearing set in the Order Granting Ex Parte Temporary Custody. USCIS contends this argument misreads its decision. Instead, according to USCIS, it has consistently noted during these proceedings that a "permanent" custody order is not required, but that some aspects of the order cannot be temporary, including the finding of non-viability of reunification, which must be a final determination by the court on a parent's ability to be reunified with their child. As explained above, no final determination on the viability of reunification occurred here.

16

Plaintiff also argues the congressional intent behind the Immigration and Nationality Act reveals a congressional intent to expand and protect SIJ applicants. USCIS responds that the requirement of a final determination falls in line with the agency's interpretation of governing law. First, under applicable statutes, the juvenile court order had to contain a finding equivalent to Plaintiff being "deemed eligible by the juvenile court for long-term foster care." 8 C.F.R. § 204.11(c)(3),(4). Eligibility for long-term foster care is established if the court finds "family reunification is no longer a viable option." Id. § 204.11(a). Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), in section 235(d)(1), Congress amended section 101(a)(27(J) of the Immigration and Nationality Act:

> by striking "State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment;" and inserting "State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;" . . . .

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, PL 110–457, December 23, 2008, 122 Stat 5044. The TVPRA continues in section 235(d)(5) to provide:

> (5) STATE COURTS ACTING IN LOCO PARENTIS.—A department or agency of a State, or an individual or entity appointed by a State court or juvenile court located in the United States, acting in loco parentis, shall not be considered a legal guardian for purposes of this section or section 462 of the Homeland Security Act of 2002 (6 U.S.C. 279).

Id. USCIS contends it interprets the statutory and regulatory requirements of a family reunification as necessitating a final decision, reasoning that the "in loco parentis" or other temporary custody placements or findings are insufficient for SIJ eligibility. USCIS argues to this Court that considerations of reunification with a family member that are sufficient to support eligibility for long-term foster care are not satisfied by a short-term finding about viability of reunification in a five-day emergency order, added only through a much later nunc pro tunc order again obtained ex parte without a clear factual basis. USCIS submits its interpretation is consistent with the plain

17

meaning of the statute and the statutory requirement of consent, which requires sufficient evidence of a factual basis for the juvenile court's findings that USCIS can conclude the order was genuinely sought to obtain relief from abuse, neglect, or abandonment.

An agency is entitled to deference in its interpretation of statutes and regulations it is charged with administering. See Shipbuilders Council of Am. v. U.S. Coast Guard, 578 F.3d 234, 242 (4th Cir. 2009) (collecting cases). The Fourth Circuit in Shipbuilders explained:

> Under Auer deference, an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); accord Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) ("[T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."); see Christensen v. Harris County, 529 U.S. 576, 587-88, 120 S.Ct. 1655 146 L.Ed.2d 621 (2000) (explaining that Chevron deference applies to an agency's interpretation of a statute while Auer deference applies to "an agency's interpretation of its own regulation"); see also United States v. Deaton, 332 F.3d 698, 708–09 (4th Cir. 2003) (applying Chevron deference to the agency's construction of the statute in question and Auer deference to its interpretation of the regulation issued pursuant to that statute) . . . .

Bearing these principles in mind, Plaintiff has failed to show how USCIS's interpretation of controlling statutes and regulations resulting in its decision either exceeded its authority or made an ultra vires eligibility requirement.

**C. Violating Procedure Under 5 U.S.C. § 706(2)(D)**

Finally, Plaintiff contends the Court must set aside agency action reached "without observance of procedure required by law." As part of this review,

> The decisionmaking process of an administrative agency must conform to both (1) procedural requirements prescribed by applicable statutes or regulations; and (2) the constitutional requirements of due process. Here, the Court must specifically determine if [the agency's] actions in reaching its final decision complied with the prescribed procedural framework and if these actions violated plaintiff's due process rights.

Ellis v. Ritchie, 803 F. Supp. 1097, 1101 (E.D. Va. 1992). "It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking." Daniel v. Castro, 662 F. App'x 645, 649 (11th Cir. 2016) (citing Bennett v. Spear, 520 U.S. 154, 172 (1997); 5 U.S.C. § 706(2)(D)).

In support of her argument that USCIS failed to yield to applicable procedure required by law, Plaintiff contends USCIS's decision violates the Full Faith and Credit Clause because the decision fails to give the juvenile court orders full faith and credit. Plaintiff cites 28 U.S.C. § 1738 in support of its argument, which provides, "Such Acts, records and judicial proceedings [of any such State, Territory or Possession] or copies thereof, so authenticated, shall have the same full faith and credit *in every court* within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738 (emphasis added).

As an initial matter, the Court notes Plaintiff has failed to show how this statute applies to an agency, such as USCIS, when the plain language of the statute clearly indicates applicability in courts but does not mention agencies. Plaintiff's briefs here recognize as much. (Doc. No. 14, pp. 12-13, "To the extent the agency is exempt from full faith and credit, this Court cannot and should not enforce a federal agency's decision that refers to defer and to give credit to a duly entered juvenile court order."). Plaintiff has not persuaded the Court to extend statutory application to agencies when other courts have flatly rejected such approach. See, e.g., N.L.R.B. v. Yellow Freight Sys., Inc., 930 F.2d 316, 320 (3d Cir. 1991) ("The terms of the statute require only courts of the United States to give issue preclusive effect to state court decisions. The directive of section 1738 has been literally applied. The same analysis used in holding that section 1738 does not require giving preclusive effect to state administrative factfinding . . . or arbitration awards. . . because they

19

are not 'judicial proceedings' requires a conclusion that federal administrative agencies are not bound by section 1738 because they are not 'courts.'" (citations omitted)).

Despite its inapplicability, in response, USCIS argues were the "Full Faith and Credit Clause" applicable, it only requires the juvenile court orders be given the same effect North Carolina would allow under state law, which – according to USCIS – is limited. As explained above, the juvenile orders entered here were issued pursuant to temporary emergency jurisdiction and based on information provided in ex parte proceedings. USCIS considered the statutory basis for temporary emergency jurisdiction, on which the juvenile orders were entered, as compared to other North Carolina statutes and applicable law governing jurisdiction and due process for final resolution of matters related to custody. See Franchise Tax Bd. of California v. Hyatt, 538 U.S. 488, 494 (2003) (explaining "the full faith and credit command is exacting with respect to a final judgment . . . rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment . . . ." (citations and quotations omitted)). Plaintiff has not shown how USCIS failed to give the Order Granting Ex Parte Temporary Custody and the Ex Parte Order for Judgment Nunc Pro Tunc the same effect they would have received under state law.

### IV. CONCLUSION

For the reasons above, the Court DENIES Plaintiff's Motion to Set Aside Agency Action (Doc. No. 14). Plaintiff has failed to show how, under applicable law, USCIS's decision was arbitrary and capricious, exceeded the agency's statutory authority, or disregarded procedures required by law. In addressing the arguments related to Plaintiff's Motion, the Court concludes the record, along with applicable law, can reasonably be read to support USCIS's decision. Accordingly, USCIS's Motion for Judgment on the Record (Doc. No. 17) is GRANTED.

IT IS SO ORDERED.

Signed: August 22, 2017

Frank D. Whitney
Chief United States District Judge